## Garber & Sons, Inc., v. Draper et ux.

*Butz, Hudders, Tallman & Rupp*, for plaintiff.
*S. V. Printz*, for defendants.

HENNINGER, P. J., June 21, 1954.—Plaintiff contractor filed a mechanics' lien against premises of defendants, owners of Lots Nos. 132, 133 and 134 Main Street, Farmington, Salisbury Township, with the Post Office address of 936 E. Susquehanna Street, Allentown, Pa., for the balance of $705 for the digging and casing of a sinkhole on the said premises.

Defendants moved to strike off the lien on the theory that no lien could be filed for the purpose under the Mechanics' Lien Act of 1901, P. L. 431, 49 PS §1 et seq.

Neither party has been able to furnish a case ruling specifically whether a lien may or may not be filed for the drilling and casing of a sinkhole. From this it could be argued by the owners that its exclusion was

so obvious that the bench and bar of Pennsylvania never attempted to file such a lien. It could be argued with equal cogency that its inclusion was so obvious that no one ever contested the right to file such a lien. With the prevalence of sinkholes and the mass of cases in which liens have been filed for all sorts of materials, the latter view would seem more likely to be correct.

The owners contend that a sinkhole does not come within the definition of "structure or other improvements" in section 1 of the act (49 PS §1). That may or may not be, although the term sinkhole could be stretched to mean a "flume", "tank" or "aqueduct", and it would certainly be "other improvement of whatsoever kind or character the same may be". It is our opinion, however, that as used in section 1 of the act, the structures named are the main structure upon which the lien is to be filed and that the structures named are not intended to mean improvements that are themselves appurtenant to another structure.

It is clearly the intention of the contractor not to file a lien upon the sinkhole " and the curtilage appurtenant thereto", but to file a lien against the dwelling and its curtilage on the theory that the sinkhole was a necessary equipment for the building, which was the structure to be served.

This claim is therefore filed under section 2 of the Mechanics' Lien Act, 49 PS §21, which reads as follows:

"Every structure or other improvement, and the curtilage appurtenant thereto, shall be subject to a lien for the payment of all debts due to the contractor or sub-contractor in the erection and construction or removal thereof, in the addition thereto, and in the alteration and repair thereof, and of the outhouses, sidewalks, yards, fences, walls, or other enclosure belonging to said structure or other improvement; and in the fitting up or equipment of the same for the purpose for which the improvement is made, including

paperhanging, grates, furnaces, heaters, boilers, engines, chandeliers, brackets, gas and electric pipes, wires and fixtures; and for like debts, contracted by such owner in the fitting up or equipment with machinery, gearing, boilers, engines, cars, or other useful appliances, of new or old structures or other improvements, for business purposes; and for like debts, contracted by such owner for rails, ties, pipes, poles and wires, and the excavation for and laying and relaying, or stringing and restringing, said rails, ties, pipes or wires, or erecting said poles, whether on the property described in the claim or upon other private property or public highways."

It is true that a sinkhole is not among the items enumerated under "fitting up or equipment" and cannot well be brought within any of them. The nearest approach would be to "pipes", but the context would indicate that the word pipes refers back to the word "gas" as "wires" refers to "electric" and "fixtures" to both gas and electric.

It is to be noted, however, that claims for fitting up or equipping structures or other improvements *include* those enumerated but that the list is not definitive since it applies to any debts due in the fitting up or equipment of the structure for the purpose for which the improvement was made.

That this is the correct interpretation is shown by the recent (1950) case of Haas v. Wagner, 78 D. & C. 478, in which a claim was allowed for excavating a ditch and laying pipes for sewage disposal, the very same purpose served by a sinkhole.

In Owen & Salter v. Johnson, 174 Pa. 99, a lien was sustained for plumbing which included a drainage system. The court said (p. 103) :

"Plumbing is recognized by the legislation in relation to mechanics' liens as a part of the work of erection and construction of buildings. It is not a luxury or convenience only, but an essential part of modern

city dwellings. The supply of water is indispensable, and underground drainage by which waste can be carried off is enjoined by city ordinance. The prohibition of surface drainage and the use of wells either for the supply of water or as receptacles for waste made a part of the plumbing absolutely necessary."

In Kountz Brothers Co. v. Consolidated Ice Company, 28 Pa. Superior Ct. 266, a claim was allowed for brick as a foundation for boilers in an ice plant, the court stating (p. 268) :

"The power necessary to run the ice plant being absolutely essential to the use of the building for the purpose for which it was intended, and the engine being essential to the application of the power, we think the foundations of the engine were primarily an essential part of the said building, as much so as the engine itself; and, being so, the plaintiff who furnished the brick for the original contractor had the right to a lien therefor."

The owners have cited Duffy v. Stroud, 1 Del. 196, in which it was held that no lien could be filed for a well. The Duffy case, however, is unusual in its facts, for there, in a city property, the well was dug on the boundary line between two different property owners and while it was probably intended to serve the tenements, it was not connected therewith.

With  a sinkhole, there must be a physical attachment to the dwelling or at least to an outhouse (specifically mentioned in the act) and there is no possibility of its not serving the main structure.

The other fear in the Duffy case, that an innocent purchaser would not know of the date of the improvement and might be saddled with an unexpected lien, does not arise here, because this contract is directly with the owner and the rights of third parties are not involved.

Now, June 21, 1954, the rule to strike off the above-mentioned mechanics' lien is discharged.